Christopher R. Kaup, State Bar No. 014820
J. Daryl Dorsey  State Bar No. 024237

**TB** TIFFANY & BOSCO
P.A.

Third Floor, Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Facsimile: (602) 255-0103
E-Mail: crk@tblaw.com; jdd@tblaw.com
*Attorneys for HIE Servicing, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| In re: | Chapter 11 Proceedings |
|---|---|
| SUNRISE HOSPITALITY, LLC, | Case No. 09-26457-JMM |
| Debtor. | **MOTION TO EXCUSE TURNOVER OF ASSETS BY RECEIVER UNDER 11 U.S.C. § 543** |

HIE Servicing, L.L.C. ("HIE"), the senior secured creditor of Sunrise Hospitality, LLC (the "Debtor"), by and through its undersigned counsel, hereby moves this Court to Excuse the Turnover of Assets by Receiver pursuant to 11 U.S.C. § 543(d)(1) ("Motion") because the interest of creditors and equity security holders will be better served by permitting the Receiver to continue to have possession and control of the assets.

This Motion is more fully supported by the attached Memorandum of Points & Authorities, the Declaration of John Mitchell (the "Mitchell Declaration"), attached hereto as **Exhibit "A",** the Managing Member of Resolute Commercial Services, L.L.C.,

15766-001/416778     -1-

the state court appointed Receiver[1] (the "Receiver") the documents attached as Exhibits to the Mitchell Declaration and the entire record in this case.

**RESPECTFULLY SUBMITTED** this 20th day of October, 2009.

**TIFFANY & BOSCO, P.A.**


By:/s/ Christopher R. Kaup, #014820
    Christopher R. Kaup, Esq.
    J. Daryl Dorsey, Esq.
    Third Floor Camelback Esplanade II
    2525 East Camelback Road
    Phoenix, Arizona 85016-4237
    *Attorneys for HIE Servicing, LLC*

## MEMORANDUM OF POINTS & AUTHORITIES

**I.    FACTUAL BACKGROUND.**

1.    The underlying prepetition state court receivership action involves real property located in Pinal County, Arizona, on which is located a hotel with 90 rooms and is commonly known as: 1200 Sunrise Plaza Drive aka 300 W. Highway 287, Florence, Arizona 85231 (the "Property" or the "Real Property"). The Property, known as Holiday Inn Express Suites is a Class "A" 3-story/88 room limited service hotel.

2.    Choice Bank advanced funds to Debtor, in the original principal amount of $5,510,000.00 (the "Loan"), under the terms of that certain Promissory Note ("Note") dated June 25, 2007. A true and correct copy of the Note is attached to the Verified Complaint in support of the appointment of the Receiver attached hereto as **Exhibit "B"** and incorporated herein by this reference.

---

[1] Counsel for HIE represents Resolute in other state court receivership matters unrelated to Debtor, the Property and this case. That fact also was disclosed to the court in the receivership action. HIE is informed that the Receiver is represented by separate legal counsel in the above captioned case.

15766-001/416778            -2-

3. As security for the Loan and the Note, Debtor entered into that certain Construction Deed of Trust (the "Deed of Trust"), dated June 25, 2007, in favor of Choice Bank and against the Real Property. A true and correct copy of the Note is attached to the Verified Complaint in support of appointment of the Receiver attached hereto as **Exhibit "B"** and incorporated herein by this reference.

4. Choice Bank assigned and transferred its interest in the Deed of Trust to EK Nevada, Inc., pursuant to that certain Assignment of Deed of Trust, dated April 13, 2009. A true and correct copy of the Note is attached to the Verified Complaint in support of appointment of the Receiver attached hereto as **Exhibit "B"** and incorporated herein by this reference.

5. EK Nevada, Inc. assigned and transferred its interest in the Deed of Trust to HIE, pursuant to that certain Assignment of Deed of Trust, dated April 13, 2009. A true and correct copy of the Note is attached to the Verified Complaint in support of appointment of the Receiver attached hereto as **Exhibit "B"** and incorporated herein by this reference.

6. Pursuant to the terms of the Deed of Trust, HIE is the current owner and holder of a senior lien on the Real Property and the owner of all personal property as well as all rents and any other form of income relating to the Real Property, pursuant to the following provisions:

> Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.
>
> . . . .
>
> The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions

for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

. . . .

The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

*See Id.* at pp. 2, 13.

7. Rents include payments made by guests for staying at the Real Property.

8. Debtor defaulted under the terms of the Note and Deed of Trust by failing to make payments when due and that failure has continued for a period of more than ten days after the due date.

9. As a result of Debtor's default, HIE has the right to:

**Collect Rents**. Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

*See* Deed of Trust at p. 9 (emphasis added).

10. The amount of principal due and owing to HIE by Debtor under the terms of the Note was not less than $5,461,267.00 as of September 16, 2009, plus late fees and interest beginning on July 1, 2009 until paid.

11. Despite Debtor's numerous defaults and written demand made by HIE upon Debtor, Debtor failed to pay over to HIE the rents and revenues from the Real Property in the manner required in the Deed of Trust. Those funds constitute cash collateral and the unauthorized use of or failure to turnover that collateral constitutes conversion of HIE's property and has and will cause harm to HIE.

12. On September 1, 2009 HIE sent a demand letter to Debtor detailing numerous defaults (the "Demand Letter") under the loan documents including the failure to:

    a. Maintain the Loan funds in balance with the construction budget and deposit with HIE the sum of $113,672.94, which represents the balance necessary to bring the Loan funds in balance with the construction budget;

    b. Correct the access road it constructed to meet the City of Florence's Code and obtain approval from the City of Florence.

    c. Maintain books and records in accordance with GAAP and permit HIE to examine and audit such books and records at all reasonable times;

    d. Provide annual statements and tax returns to HIE;

    e. Pay sales and use taxes to the City of Florence since September 2008, which has resulted in a Notice of Claim of Lien by the City of Florence for the amount of $89,029.31 as of June 2009; and

    f. Pay 2008-2009 property taxes.

13.     Pursuant to the provisions of the Deed of Trust and the ongoing defaults by Debtor under the terms of the Note and Deed of Trust, HIE was entitled, as a matter of law, to the appointment of its nominee as the Receiver of the Real Property, including all improvements thereon, in order to hold, manage, and operate the Real Property.

14.     The Receiver was appointed by Judge Robert H. Oberbillig of the Superior Court of Arizona, pursuant to the Order Appointing Receiver for Plaintiff (the "Receivership Order") entered on October 6, 2009. *See* the Receivership Order, at p. 4, attached as **Exhibit "1"** to the Mitchell Declaration, attached hereto as **Exhibit "A."** The Receiver took its Oath on October 6, 2009 and filed its Receiver's Bond, its Acceptance and its Oath of Receiver with the Superior Court on October 13, 2009. The Superior Court took "exclusive jurisdiction and possession" of all assets of the Partnership and vested the Receiver with "the complete and exclusive control, possession, and custody" of all such property. *See* the Receivership Order, at p. 4, attached as **Exhibit "1"** to the Mitchell Declaration, attached hereto as Exhibit "2."

15.     Debtor was explicitly enjoined "from interfering with the [Receiver's] possession, custody and control" of the Debtor and the assets of the Partnership. *See* Receivership Order, at p. 5, ¶1, **Exhibit "1"** to the Mitchell Declaration, attached hereto as **Exhibit "A."** Despite these clear directives of the Receivership Order, Mr. Emmanuel Ikharebha, the owner and principal of Debtor. , without the consent or authority of the Receiver, purported to act on behalf of the Debtor and caused the filing of the Chapter 11 petition initiating the above-captioned case.

16.     Counsel for HIE received an email communication from Debtor's counsel informing him of the October 19th, 2009 bankruptcy filing. Included in the email is a demand for turnover of property pursuant to 11 U.S.C. § 543.

1. 17. Counsel for HIE also received on October 19, 2009, the <u>Receiver's Inventory and Initial Report</u> (the "Report"), attached as **Exhibit "3"** to the Declaration of John Mitchell attached hereto as **Exhibit "A"**. Based on the Report, the Receiver should be excused from Debtor' demand for turnover, pursuant to 11 U.S.C. § 543(d)(1).

## II. LEGAL ANALYSIS.

11 U.S.C. § 543 provides that the Court may excuse compliance with the turnover requirements if the interest of creditors would be better served by permitting a custodian to continue in possession, custody, or control of the property. 11 U.S.C. § 543(d)(1).

### A. The Receiver Should Be Excused From Turnover Under The Facts Of This Case.

In this case, the Report notes, in pertinent part that:

- Upon taking control of the hotel, the Receiver's staff discovered that the business/manager's office of Debtor and its business affairs, files and accounting books and records were in complete disarray.

- The Receiver's staff became aware of various operational deficiencies needing immediate attention. The Pinal County Health Department indicated the hotel was operating the pools without a current permit and did not have a current permit to operate the breakfast service.

- The Property did not have the Federal or State wage posters and the workmen comps poster displayed as required by law.

- Invoices from vendors for the past several months were unopened and in various stacks throughout the Debtor's office.

- A pile of handwritten stubs from computerized checks were kept in a drawer in the Debtor's office, many of which only indicated the check number (pre-printed), the vendor's name and an amount.

15766-001/416778  -7-

- In most cases, no invoice numbers or even dates written were included on the stubs.

- The Receiver obtained a backup copy of the QuickBooks accounting records on a CD. Upon review of the data included therein, the Receiver's staff discovered that from March 1, 2009 through August 31, 2009, the only entries that were recorded were bank transactions. The accounts do not appear to have been reconciled during that period, as the balances do not correlate to actual bank balances. As a result, financial statements that can be generated from the QuickBooks files are not representative of the actual results of business operations for that period of time.

- Also as part of the review of the bank and accounting records, the Receiver noted a number of unusual transactions as outlined below:

    1) The Debtor has been making ATM withdrawals from the disbursements account. The Receiver noted an average of 4 cash withdrawals per month for the period April 1, 2009 through September 30, 2009. Most of these transactions were for an even $400.00 and were recorded in the QuickBooks records as various expenses, however, the Receiver is unable to locate any corresponding invoices to validate these withdrawals.

    2) There were a number of questionable intercompany transactions recorded including monthly payments by Debtor to Palo Christi Investments, which appear to be mortgage payments on a property owned be Sunrise Plaza LLC, another company apparently owned by Mr. Ikharebha.

    3) It appears as though Debtor paid some personal expenses from its business accounts.

- In addition the Receiver has determined that many expenses have not been paid, including $117,710 in sales and occupancy taxes unpaid since the date the hotel was opened in 2008 and an estimated $37,200 in penalties and interest that have accrued on the unpaid taxes.

15766-001/416778 -8-

### B. The Receiver Should Be Excused From Turnover Because the Collateral Has Been Jeopardized by the Debtor's Principal's Actions.

The principal of the Debtor, Emmanuel Ikharebha, failed to pay contractors and allowed materialness' liens to arise against the Property subject to the Receivership. Based on this action, HIE's collateral is jeopardized and HIE is forced to indemnify and defend certain defendants named in a lawsuit (filed by Knochel Bros., Inc.) which alleges the materialmens' lien against the Property. See **Exhibit "C"** attached hereto (Arizona state court complaint *Knochel Bros., Inc. v. Sunrise Hospitality, LLC, et al.*, Case No. CV2009-03587). Mr. Ikharebha also has failed to pay sales tax during the entire history of his operation of the Property in violation of applicable law. Moreover, the failure by Mr. Ikharebha to institute and maintain any semblance of accounting records and controls and financial books and record places the Property and HIE's cash collateral at grave risk. The inter-company transfers and payment of personal expenses also demonstrate that allowing him to manage Debtor postpetition is contrary to the interests of all creditors and the bankruptcy estate. Mr. Ikhareba's inability to operate the Property in accordance with the high standards of a fiduciary and the Bankruptcy Code is further demonstrated by the facts that he failed to maintain the required permits for the pool and breakfast service and the Receiver discovered several months of unopened bills in various stacks throughout Debtor's business office and a pile of handwritten stubs from computerized checks kept in a drawer in that office, many of which referenced only a minimal amount of information. Finally, HIE does not and will not consent to the use of

its cash collateral if Mr. Ikharebha is restored to control of the operation of the Property and Debtor.

Based on the foregoing, in order to protect the Bankruptcy Estate and the creditors, it is imperative to excuse the Receiver from turning over the Debtor's property and, instead, to allow the Receiver to continue in its role. The case law is clear that the receiver may be excused from turnover if the Court determines, in exercise of its discretion that, "the interests of creditors and, if the debtor is not insolvent[2], of equity security holders would be better served by permitting a custodian to continue in possession, custody or control of such property...." 11 U.S.C. §543(d)(1). *In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994). *In re Constable Plaza Associates,* 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991).

Deciding whether to excuse compliance with section 543 is necessarily a "fact intensive" inquiry because the Court must determine what is in the best interest of the creditors. *In re Uno Broadcasting Corp.*, 167 B.R. at, 200. Courts consider factors including, but not limited to: whether there is sufficient income to fund a reorganization and whether there has been mismanagement by the debtor. *Id.*; *see also Dill v. Dime Savings Bank, FSB*, 163 B.R. 221, 225 (E.D.N.Y.1994). Additionally, Courts should consider the actions and the skill of the Receiver. In *Uno Broadcasting Corp.*, the Court considered important the actions of the receiver, who had quickly and professionally addressed the serious problems with the debtor company and had sufficient experience in the industry to handle its business affairs. 167 B.R. at 200-01.

---

[2] Here, there can be no doubt that Debtor is insolvent. As a result, the interest of the sole equity holder need not be considered in the analysis of whether turnover should be excused.

15766-001/416778 -10-

Here, there can be no dispute that Resolute Commercial Services, LLC and Mr. Mitchell, the Receiver in this case, have substantial experience in complex commercial matters acting as a trustee and receiver. Furthermore, as the Report indicates, the Receiver has already provided a significant benefit to the Debtor's estate by organizing the Debtor's accounts, establishing accounting policies and procedures, and marketing the Debtor to ensure profitability. For example, the Report notes:

- The Receiver has established initial accounting policies and procedures which include daily reconciliation of cash receipts to the in-house Holiday Inn reservations system (Opera), deposit of cash and checks received and recording of daily revenue, receipts, and disbursements in QuickBooks.

- The Receiver's initial review of operations indicated that hotel occupancy was 30% for the first six days of October and 33% year-to-date through October 6th. During the first two days managing the property, it was noted that several guests were turned away rather than offer a rate lower than the standard rack rate of $129/night. A further review revealed that the rates for the property were higher than all similar properties in the competing market area. The Receiver's staff has continued to check rates at surrounding properties on a daily basis Monday through Friday. As a result of the data that was collected, rates were reset during the week of October 12th as follows: standard rate $103/night, "fade" rate (rate that can be offered if resistance is met for standard rate) $89.99/night, government employee rate $70/night. The government employee rate is equal to the per diem reimbursement available to government employees. For the weekend of October 17 – 18, occupancy rose to 50% and revenue increased from approximately $3,100/night on average year-to-date to $4,200/night for the weekend.

- In addition to reviewing room rates, the Receiver's staff has also identified several marketing opportunities for the Property in the local area and will be placing brochures and other marketing materials at various locations. It has also been noted that e-commerce marketing has not been deployed for the property in the last few months, so it is the Receiver's intention to begin listing a

15766-001/416778 -11-

> limited number of rooms on appropriate nights for availability through Orbitz, Expedia and other similar e-commerce sites.

The facts above show that the Debtor has been mismanaged and that the Receiver has already performed to ensure the accounts and accounting policies and procedures have been corrected. In addition, because of Mr. Ikharebha, HIE expects it will be forced to participate in litigation involving material men's liens in order to protect its interest in its collateral. Finally, HIE will not consent to the use of its cash collateral should Mr. Ikhareba return to control of the Property because of the jeopardy in which he has and will place HIE's collateral.

## III. CONCLUSION.

The facts in this case require the Court to excuse the Receiver from compliance with the Section 543 turnover requirements. Resolute Commercial Services, LLC is a well qualified Receiver which has acted promptly, objectively and professionally to perform its duties. The facts demonstrate that the creditors will certainly be better off if the Receiver remains in place. Mr. Ikhareba has not and can not operate the Property properly with proper accounting and financial controls over its books and records and within applicable Arizona laws and regulations. There is also no need for a reorganization in this case and no such reorganization is within prospect; rather, the Debtor is forum shopping when it filed the petition without the Receiver's authority to do so, in violation of the Receivership Order.

15766-001/416778 -12-

**WHEREFORE**, HIE respectfully requests the Court enter its Order, pursuant to 11 U.S.C. § 543(d)(1), excusing the Receiver from the turnover requirements of Section 543.

**RESPECTFULLY SUBMITTED** this 20th day of October, 2009.

**TIFFANY & BOSCO, P.A.**

By: /s/ Christopher R. Kaup, #014820
Christopher R. Kaup, Esq.
J. Daryl Dorsey, Esq.
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
*Attorneys for HIE Servicing, LLC*

**FOREGOING** electronically filed with the
Clerk of United States Bankruptcy Court
this 20th day of October, 2009, and a copy mailed to:

Shelton L. Freeman, Esq.
DECONCINI, MCDONALD, YETWIN & LACY, P.C.
7310 North 16th Street #330
Phoenix, AZ 85020
*Attorneys for Sunrise Hospitality LLC*

U.S. Trustee
OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Suite 204
Phoenix, AZ 85003

/s/ Lauri Andrisani