SHELTON L. FREEMAN (AZ #009687)
NANCY J. MARCH (AZ #012802)
DECONCINI MCDONALD YETWIN & LACY, P.C.
6909 East Main Street
Scottsdale, Arizona 85251

Ph: (480) 398-3100
Fax: (480) 398-3101
E-mail: tfreeman@lawdmyl.com
E-mail: nmarch@dmyl.com

Proposed Attorneys Sunrise Hospitality LLC

SIGNED.

Dated: November 02, 2009



*James M. Marlar*
JAMES M. MARLAR
Chief Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

In re:

SUNRISE HOSPITALITY LLC,

Debtor.

In Proceedings Under Chapter 11

Case No.: 4:09-bk-26457-JMM

**STIPULATED ORDER AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTOR, PROVIDING FOR ADEQUATE PROTECTION OF LENDER AND LIFTING AUTOMATIC STAY**

Having received and considered the Stipulated Order Authorizing Use of Cash Collateral and Lifting Automatic Stay (the "Stipulation"), filed by Debtor and Debtor in Possession Sunrise Hospitality, LLC (the "Debtor') and secured creditor HIE Servicing, LLC ("Lender"); due and proper notice of the Stipulation having been given; and it appearing that approval of the relief as set forth is fair and reasonable and in the best interests of the Debtor and its creditors and is essential for the continued operation of the Debtor's business and the protection of Lender's secured claims; and after due deliberation and consideration, good and sufficient cause appearing therefore; the Court hereby approves the Stipulation and finds and orders as follows:

## RECITALS

A. Notice of the Stipulation has been provided in connection with F. R. Bankr. P. 4001(d), which notice is appropriate in the particular circumstances of this case and is sufficient for all purposes under the United States Bankruptcy Code and all applicable Bankruptcy Rules in respect to the relief requested.

B. On October 6, 2009 Resolute Commercial Services, L.L.C. ("Resolute"), was appointed to serve as the receiver for the Real Property (as that term is defined below) by Judge Robert H. Oberbillig of the Superior Court of Arizona, pursuant to the Order Appointing Receiver for Plaintiff (the "Receivership Order").

C. On or about October 19, 2009 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Arizona (the "Court"). The Debtor is operating a 90 room hotel ("Hotel") the on real property located in Pinal County, Arizona at 1200 Sunrise Plaza Drive aka 300 W. Highway 287, Florence, Arizona 85231 (the "Real Property") as a Holiday Inn Express Suites (the "Hotel") as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No Official Committee of Unsecured Creditors has been appointed in this case.

D. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

E. On or about October 20, 2009, the Lender filed its Emergency Motion to Excuse Turnover of Assets by Receiver (the "Excusal Motion"), DE 6. After an initial hearing on October 22, 2009, the Court scheduled an evidentiary hearing on the motion for October 29, 2009 at 9:00 a.m.. Lender filed its Motion for Relief from the Automatic Stay (the "Stay Relief Motion") on October 26, 2009. The Stipulation for use of

cash collateral and relief from the automatic stay resolves the Turnover Motion and the Stay Relief Motion and the parties agree that hearing may be vacated.

    F.    The Debtor executed a Promissory Note and Construction Deed of Trust in favor of Choice Bank which advanced funds to the Debtor, in the original principal amount of $5,510,000.00 (the "Loan"), under the terms of that certain Promissory Note ("Note") dated June 25, 2007.

    G.    As security for the Loan and the Note, the Debtor entered into that certain Construction Deed of Trust (the "Deed of Trust"), dated June 25, 2007, in favor of Choice Bank and against the Real Property.

    H.    Choice Bank assigned and transferred its interest in the Deed of Trust to EK Nevada, Inc., pursuant to that certain Assignment of Deed of Trust, dated April 13, 2009.

    I.    EK Nevada, Inc. assigned and transferred its interest in the Deed of Trust to HIE, pursuant to that certain Assignment of Deed of Trust, dated April 13, 2009. The Promissory Note, Deed of Trust, Choice Bank Assignment of Deed of Trust, and the EK Assignment of Deed of Trust are hereinafter collectively referred to as the "Loan Documents".

    J.    Pursuant to the terms of the Loan Documents, HIE is the current owner and holder of a properly perfected senior lien on the Real Property and all personal property (the "Personal Property", including all hotel room rents, any and all insurance policies, reserves, accounts, escrows, claims, deposits, contract rights, any other form of income relating to the Real Property and any and all proceeds, products, rents or profits from any of the foregoing, which is or may result in cash collateral. The Real Property and the Personal Property are collectively referred to hereinafter as the "Property".

K. The Lender has asserted that the principal amount of its secured claim against the Debtor is $5,461,267.00 as of September 16, 2009, plus any and all additional accrued and unpaid interest thereon and any and all fees, charges and other amounts due under the Promissory Note dated June 25, 2007 and all other written agreements or other loan documents executed in connection therewith (collectively, the "Prepetition Loan Documents"), including without limitation, all attorneys' fees and costs (collectively, the "Outstanding Balance").

L. Prior to September, 2009, the Debtor defaulted under the Loan Documents by, among other things, failing to make certain required payments due thereunder. Lender sent written notice to the Debtor, informing and notifying the Debtor that the Debtor was in default under the Loan Documents. The Debtor has failed to cure any of the defaults under the terms of the Loan Documents..

M. "Cash Collateral" as defined by 11 U.S.C. § 363(a) and as used in this Order shall include all postpetition proceeds, products, offspring, rents and/or profits of property, accounts or other payments for the use and occupancy of the Property, including without limitation, the Hotel, or for services rendered by the Debtor, including without limitation all accounts receivable, all cash and cash equivalents and all proceeds thereof pursuant to 11 U.S.C. § 552(b) and as the term "proceeds is utilized or otherwise described in the Uniform Commercial Code.

N. The Stipulation provides that the Debtor may use the Cash Collateral through and including 12:59 p.m. on January 31, 2010, subject to the terms and conditions of this Order, pursuant to Section 363(c)(2)(A) of the Bankruptcy Code.

WHEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. Lender and the Debtor hereby acknowledge and agree that the foregoing *Recitals* are true and accurate.

2. The Debtor acknowledges and agrees that the Loan Documents are valid, properly perfected and fully enforceable. The Debtor acknowledges and agrees that Lender holds a valid, unavoidable, perfected and first priority pre-petition and post-petition lien on the Property, including any and all hotel room rents and other income generated by or arising from the Real Property. The Debtor further acknowledges that none of Lender's liens are subject to avoidance under §§ 544, 545, 546, 547, 548, 549, 550 or any other provision of the Bankruptcy Code.

3. The Debtor and Lender acknowledge and agree that all hotel room rents and all other income and revenue generated by or in connection with the Real Property, and the proceeds thereof are Lender's "cash collateral" within the meaning of 11 U.S.C. § 363(a) (hereinafter, the "Cash Collateral").

4. The Excusal Motion is granted and Resolute is excused, pursuant to 11 U.S.C. §543(d)(1), from compliance with the requirements of Section 543(a), (b) & (c) subject to the terms of this Stipulated Order; however, the effectiveness of that relief is stayed until such time as an Event of Default has occurred that has not been timely cured as set forth in Sections 17 and 18 below.

5. The Stay Relief Motion is granted only to the extent necessary to implement the terms of this Stipulated Order, subject to the terms and conditions set forth below; however, the effectiveness of that relief is stayed until such time as an Event of Default has occurred that has not been timely cured as set forth in Sections 17 and 18 below.

6. Lender shall be paid regular monthly adequate protection payments in the amount of up to $25,000.00 (the "Adequate Protection Payment") payable as set

forth below. Subject to the terms and conditions of this Stipulated Order, Lender hereby consents to the Debtor's use of, and Debtor is, hereby, authorized to use the Cash Collateral in the manner set forth below only for the monthly payment of actual, necessary and reasonable expenses incurred in the ordinary course of Debtor's business and operations and in accordance with the budget attached hereto as Exhibit "A" (the "Cash Collateral Budget") up to the aggregate amounts reflected in the Cash Collateral Budget for each category reflected in such Budget; *provided, however,* that all such monthly payments may only be made in strict accordance with the following waterfall: (i) the Debtor shall as a first priority make the following adequate protection payments to Lender: (a) $5,000.00 on the date of the entry of this Stipulated Order; (b) $5,000.00 on November 15, 2009; (c) $7,500.00 on December 1, 2009; and (d) $10,000.00 on December 15, 2009; and (e) $10,000.00 on every first and fifteenth day of every month thereafter during the term of this Stipulated Order before payment of any other expenses or amounts that may become due and owing by the Debtor; (ii) as a second priority, the Debtor shall pay the ordinary and reasonable regular monthly operating expenses of the Hotel as set forth in the Cash Collateral Budget, except for and excluding payments of salary, wages and other amounts to Mr. Emmanuel Ikharebha and payment of the regular monthly fees due to Resolute as set forth in the Cash Collateral Budget, and the terms of this Stipulated Order; (iii) as a third priority, the Debtor shall pay to Lender the difference between $25,000.00 and the amount previously paid to Lender in each month and to Resolute $4,000,00 per month; (iv) as a fourth priority, the payment to Mr. Ikharebha of his salary and wages in the amount of $5,750.00 per month; (v) as a fifth priority, the payment to Resolute of the difference between the total amount of its fees and costs

earned each month and the amount actually paid to Resolute in that month; and (vi) as a sixth priority, the difference between the total amount of Cash Collateral and all of the amounts set forth above (the "Excess Cash") shall be deposited in the Debtor's debtor-in-possession operating bank account (the "Operating Account") and shall serve as a reserve for payments of other necessary amounts, but, shall continue to be Lender's cash collateral subject to Lender's security interest. The Debtor may not make any payments which exceed the monthly budgeted expense for each line item included in the Cash Collateral Budget or violate any of the terms of this Stipulated Order. The Adequate Protection Payment shall be made to the Lender by bank check or wire transfer by no later than the 5th day of each month.

7. The Debtor and its employees shall deposit all Cash Collateral it receives at anytime into the Operating Account within 24 hours of the receipt of such funds. Mr. Emmanuel Ikharebha, the owner and principal of Debtor, shall be the only signatory on the Operating Account and all checks to be drawn from that account. Mr. Ikharebha shall transmit via fax or e-mail all bills, invoices, statements and contracts from any vendor or creditor (the "Creditor Invoices") received by the Debtor postpetition to Lender on the Friday of each week. Debtor shall issue all checks for all payments, including the Adequate Protection Payment, permitted under the terms of the Cash Collateral Budget promptly after receipt of the Creditor Invoices and ensure that all payments from the Operating Account are disbursed in accordance with the Cash Collateral Budget and the terms of this Stipulated Order, including the Adequate Protection Payments.

8. The Cash Collateral Budget may be modified from time to time by written agreement between the Lender and the Debtor.

9. Unless otherwise ordered by the Court or agreed to by Lender in writing, the Debtor shall not use any Cash Collateral: (i) for the payment of any pre-petition debts or obligations of the Debtor, except pursuant to the terms of a Chapter 11 Plan of Reorganization following confirmation of such a Plan; (ii) for the payment of any debts or obligations of the Debtor which are not directly related to the maintenance and operation of the Debtor's business and the Property, except as provided by the terms of this Stipulated Order; (iii) to pay any affiliate of the Debtor, any affiliate of any owner, officer or manager of the Debtor or any creditor of any such person; (iv) to object to or contest the validity, perfection, priority or enforceability of the liens granted to or held by Lender under the Deed of Trust and the other Loan Documents; or (v) to investigate, commence or continue any action, claim, or defense against Lender's officers, directors, employees, or agents. The Debtor shall not transfer any portion of the Cash Collateral to or for the benefit of any affiliate of the Debtor or any affiliate of any owner, officer or manager of the Debtor at any time without the explicit written permission of Lender and, where required by the law, the Bankruptcy Court.

10. As additional adequate protection, and to secure the obligations due and owing under the Loan Documents, Lender is hereby granted a continuing security interest in and upon the Cash Collateral and any future hotel room rents and other Cash Collateral arising or derived from the Property at any point in the future, specifically including, without limitation, all income, rents, profits and proceeds thereof generated after the Petition Date, to the extent of the use by Debtor of Lender's Cash Collateral (the

"Adequate Protection Collateral"), with the same first priority as Lender presently possesses in that type of property (the "Adequate Protection Lien"). To the extent that adequate protection as provided herein is found to be insufficient, Lender shall also be granted a first position and paramount replacement lien and security interest, pursuant to 11 U.S.C. § 507(b), in and upon all of the Adequate Protection Collateral, which lien shall be superior to the claims of all persons and all other interests, including those of the Debtor, its estate and any Trustee appointed in this or any subsequent Chapter 7 case in the event this case is converted (the "Superpriority Lien").

11. The Adequate Protection Lien and Superpriority Lien shall be deemed valid, enforceable, attached and perfected effective as of the Petition Date (and time) without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the collateral or other act (a "Perfection Action"). Should Lender so choose to attempt to file, record or effectuate a Perfection Action, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, or perfection of the Adequate Protection Lien or Superpriority Lien.

12. The Debtor shall deliver to the Lender and its counsel the following on or before November 15, 2009: the Debtor's March – September, 2009 financial statements and operating statements and a balance sheet as of October 1, 2009. The Debtor further shall deliver to the Lender and its counsel a copy of all monthly operating reports and such other documents that may be required by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 Cases on the same day as such reports or documents are delivered to the UST. Additionally, upon

reasonable notice [which shall be not less than two (2) hours if given between 8:00 a.m. and 4:00 p.m. Arizona time], the Debtor shall provide access to an authorized representative of the Lender to the operating programs for the Hotel (Opera & Holidex), accounting and book keeping computer programs, data bases and records of the Debtor, any and all other financial books, records, bank accounts and financial and accounting documents of the Debtor (whether maintained electronically, via the Internet, as hard copies or in files) and to the bank account and other banking information of the Debtor. Such access shall be made available by Mr. Emmanuel Ikharebha, principal of the Debtor, who will log on to the respective program or data base and allow Lender's representative to view any information available on those systems that is accessible by the Debtors and provide access to the "hard" files, books and records and related documents to Lender's representative to review while on the Real Property. In addition, at such times, the Debtor shall provide Lender's representative with a list of all hotel guests occupying rooms at that time and access to all unoccupied room for the purpose of verifying occupancy and the continued possession by the Debtor of personal property in those rooms. Finally, at such times and upon request, the Debtor shall provide Lender's representative with copies of all permits, bills, invoices and other correspondence regarding those permits.

13. Debtor shall also provide to Lender a reconciliation of the prior month's receipts and expenses on or before the 15th day of the following month.

14. The terms and conditions of the Loan Documents shall remain in full force and effect and shall govern the Debtor's use of Cash Collateral under the terms of this or any subsequent Order authorizing the use thereof.

15. The Lender reserves its right with regard to the characterization of the debt due the Lender as "oversecured" or "undersecured" pursuant to Section 506 of the Bankruptcy Code and the Bankruptcy Court makes no determination with regard to that matter at this time. The Lender and the Debtor each reserve all rights with respect to their respective claims and nothing in this Order shall be a waiver or determination of those rights except as otherwise provided by the terms and conditions of this Order.

16. Notwithstanding anything herein to the contrary, the Debtor's right to use Cash Collateral shall automatically cease and the Debtor shall be required to seek a further order of this Court with regard to any further use of Cash Collateral upon the earlier to occur of any of the following: (i) 11:59 p.m. Arizona Time on January 31, 2010; (ii) the conversion of this case to a chapter 7 proceeding under the Bankruptcy Code; (iii) the dismissal of this case; (iv) the appointment of a chapter 11 trustee or other independent fiduciary appointed on behalf of the Debtor in this case; (v) this Order being overruled, dismissed, vacated or modified without the prior written consent of the Lender; or (vi) the Debtor's failure to comply with the terms of this Order, subject to Lender providing written notice to Debtor and its counsel of such default and Debtor's failure to cure such default within five (5) days after receipt of such notice.

17. An event of default under this Stipulated Order (an "Event of Default" or "Default") shall include the following:

    a. . The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Stipulated Order after the date of the entry of this Order, including:

        (i)    failure to make any payment when due,

        (ii)    failure to provide any report required herein within ten (10) days of the date such report should have been provided,

        (iii)    failure to meet any other obligation required herein;

        (iv)    failure to pay real property taxes, sales taxes, occupancy taxes, employee withholding taxes and any other amounts owed to any governmental entity when due;

        (v)    failure to make any payments required to maintain in force any policies of insurance relating to the Real Property or the operation of the Hotel, including property, casualty, general liability and workers' compensation insurance;

        (vi)    failure to maintain in force or in good standing any permits or licenses relating to the Real Property or the operation of the Hotel by any governmental or regulatory agency that are in place as of the date of this Stipulated Order, the failure within 30 days from the date of the entry of this Stipulated Order to file or submit all applications, responses or other materials, provide all documents and permit all inspections necessary to reinstate or obtain any permits relating to the operation of the Hotel that were cancelled or terminated prior to the entry of this Stipulated Order or the failure to make reasonable efforts to obtain new or reinstated permits relating to the operation of the Hotel with respect to any such cancelled or terminated permits;

        (vii)    failure to maintain regular and proper accounting and financial books and records and operating controls consistent with ordinary and sound accounting and business practices;

        (viii)    failure to pay any royalties or other amounts to International Hospitality Group relating to the Debtor's "Holiday Inn Express" franchise when those amounts come due;

        (ix)    failure to remain a Holiday Inn Express franchisee in good standing;

        (x)    permitting any liens or encumbrances to arise or become recorded or filed against the Real Property or the Personal Property;

(xi) payment or transfer of any funds or money, including any Cash Collateral to any person at any time except in accordance with the terms of this Stipulated Order;

(xii) failure to transmit via fax or e-mail all Creditor Invoices to to Lender on the Friday of each week during the term of this Stipulated Order.

(xiii) failure to provide Lender any documents or permit Lender to have access to the books, records, accounting material, financial information, programs, databases, accounts and other documents relating to the business operations and financial condition of the Debtor as required by the terms of this Stipulated Order;

      b. The foreclosure, liquidation, levy, or similar act by any party (other than Lender) with respect to the Adequate Protection Collateral;

      c. The dismissal of this bankruptcy case;

      d. The appointment of a trustee under the Bankruptcy Code in the Debtor's bankruptcy case;

      e. The conversion of this bankruptcy case to a case under another chapter of the Bankruptcy Code;

      f. The stay, modification, amendment, vacating, or reversal of any term of this Stipulated Order, or any of the rights and acknowledgments conferred hereunder, without the express prior written consent of Lender; or

18. Upon the occurrence of an Event of Default, Lender shall provide written notice to the Debtor in the manner set forth herein (the "Notice"). In the event that any such Event of Default remains uncured or has not otherwise been remedied on the date which is five (5) days after the date of service of the Notice of that Event of Default:

      a. Lender's consent regarding Debtor's use of the Cash Collateral pursuant to this Stipulated Order shall be terminated without further notice;

    b. Debtor shall not use any Cash Collateral for any purpose without further order of the Court;

    c. Debtor shall hold and segregate all Cash Collateral in trust for Lender and Debtor or Resolute shall pay to Lender all such Cash Collateral, except as otherwise ordered by the Court;

    d. the Order granting the Excusal Motion shall be effective and Resolute, as the Receiver, shall be excused from the turnover requirements of 11 U.S.C. §543 and shall operate and control of the Property and the Hotel, in accordance with all applicable provisions of the Bankruptcy Code;

    e. the Order granting the Stay Relief Motion shall be effective and all stays and injunctions, including the automatic stay imposed by 11 U.S.C. §362(a), shall be automatically lifted, vacated and annulled without any further order of this Court, effective as of the date of the date which is five (5) days after the date of service of the Notice, in favor of Lender with respect to the Property in order to permit Lender to exercise any and all of its state law and contractual rights and remedies with respect to the Property, including the right to foreclose under the terms of the Loan Documents, against the Real Property through a trustee's sale conducted pursuant to Arizona law (the "Trustee's Sale");

  19. The Debtor intends to file a Motion for Authority to Pay Prepetition Wages of Employees of the Debtor after the entry of this Stipulated Order. In the event the Court grants that Motion, Lender agrees to the use of its Cash Collateral for the payment of those wages under the terms and conditions of this Stipulated Order and all

of the Adequate Protection Payments to Lender are made on the dates and in accordance with the terms set forth above.

20. The provisions of this Order shall be binding upon and inure to the benefit of the Lender and the Debtor and their respective successors and assigns, including any Trustee (Chapter 7 or otherwise) or the fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the properties of the estates of the Debtor, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of the Debtors and any other party in interest.

21. It is further ordered that the Debtors shall serve a copy of this Order and notice by first class mail within one (1) business day of the date on which the Court enters this Order on all known secured or unsecured creditors or other parties in interest listed on the Debtor's schedules or otherwise making an appearance in this case and shall immediately file with the Clerk a Certificate of Service with regard to such mailing.

22. This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon execution hereof. To the extent that any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

ORDERED, SIGNED AND DATED ABOVE.

AGREED AS TO FORM AND CONTENT:

DeCONCINI McDONALD YETWIN & LACY, P.C.

By: /s/ Shelton L. Freeman
Shelton L. Freeman
Attorneys for Debtor and Debtor in Possession
Sunrise Hospitality, LLC

TIFFANY & BOSCO, P.A.

By: /s/
Christopher R. Kaup
Attorneys for Lender HIE Servicing, LLC

16

# EXHIBIT A

# SUNRISE HOSPITALITY LLC CASH COLLATERAL BUDGET

| TIER ONE | |
|---|---:|
| Interest Payment (HIE Servicing) | |
| 11/1/2009 (or upon entry of order) | $5,000.00 |
| 11/15/2009 | $5,000.00 |
| 11/30/2009 | $7,500.00 |
| 12/15/2009 | $10,000.00 |
| 12/30/2009 | $10,000.00 |
| 1/15/2010 | $10,000.00 |
| 1/30/2010 | $10,000.00 |
| **TIER SUBTOTAL** | **$57,500.00** |
| **TIER TWO** | |
| **FOOD** | |
| Royal Cup | $1,500.00 |
| Shamrock | $2,872.00 |
| Banana/Oranges | $400.00 |
| Sams Club | $850.00 |
| Cinnamon Roll | $450.00 |
| **SUBTOTAL** | **$6,072.00** |
| **SUPPLY** | |
| As Hospitality | $350.00 |
| Pro Clean | $175.00 |
| Ecolab A (housekeeping) | $500.00 |
| Ecolab B (pest) | $180.00 |
| Guest Supply | $741.00 |
| USA Today | $321.00 |
| American Hotel Register | $1,090.00 |
| **SUBTOTAL** | **$3,357.00** |
| **ADVERTISING** | |
| Yesco | $375.00 |
| Jones | $750.00 |
| Rural Program | $250.00 |
| Gail Roberts | $900.00 |
| **SUBTOTAL** | **$2,275.00** |
| **INSURANCE** | |
| Workmans Comp | $2,800.00 |
| Liability | $1,200.00 |
| Umbrella | $400.00 |
| **SUBTOTAL** | **$4,400.00** |

# SUNRISE HOSPITALITY LLC CASH COLLATERAL BUDGET

| | |
|---|---:|
| **UTILITIES** ||
| Water/Sewer | $1,500.00 |
| Cox | $1,050.00 |
| APS | $6,500.00 |
| Southwest Gas | $900.00 |
| **SUBTOTAL** | **$9,950.00** |
| **TELEPHONE** ||
| AT&T | $450.00 |
| Qwest | |
|   Internet | $572.00 |
|   Trunk | $1,000.00 |
|   Security | $195.00 |
| **SUBTOTAL** | **$2,217.00** |
| **MAINTENANCE** ||
| Outside | $800.00 |
| Pool | $150.00 |
| Building | $1,000.00 |
| **SUBTOTAL** | **$1,950.00** |
| **ADMINISTRATIVE** ||
| Bank Fees | $2,888.00 |
| Travel/Training | $250.00 |
| Postage | $144.00 |
| Equipment leasing | $1,400.00 |
| Office supply | $700.00 |
| Computer Supply | $300.00 |
| Uniform | $150.00 |
| US Trustee Fees | $975.00 |
| Security | $366.00 |
| **SUBTOTAL** | **$7,173.00** |
| **TAXES** ||
| Property Tax | $7,500.00 |
| Sales Tax* | $10,700.00 |
| **SUBTOTAL** | **$18,200.00** |
| **PAYROLL** ||
| Payroll & Tax | $18,250.00 |
| **SUBTOTAL** | **$18,250.00** |

# SUNRISE HOSPITALITY LLC CASH COLLATERAL BUDGET

| | |
|---|---:|
| **FRANCHISE FEE** | |
| Franchise Fee** | $12,500.00 |
| **SUBTOTAL** | **$12,500.00** |
| **TIER SUBTOTAL** | **$86,344.00** |
| **TIER THREE** | |
| Additional Interest Payment (HIE Servicing) | $5,000.00 |
| Receiver Payment | $4,000.00 |
| **TIER SUBTOTAL** | **$9,000.00** |
| **TIER FOUR** | |
| Salary of Member of LLC Emmanuel Ikharebha | $5,750.00 |
| **TIER SUBTOTAL** | **$5,750.00** |
| **TIER FIVE** | |
| Additional Receiver Payment | $4,000.00 |
| Accountant Fees | $1,000.00 |
| **TIER SUBTOTAL** | **$5,000.00** |

\* Based on 10.7% of sales on estimated $100,000 of revenue
\*\* Based on 12.5% of sales on estimated $12,500 of $100,000 of revenue

*Payments to Tiers 3, 4, and 5 are subject to net available cash and will be paid monthly on a "waterfall" basis (i.e. tier three will be paid in full before tier four receives payment).*