Christopher R. Kaup, State Bar No. 014820
J. Daryl Dorsey  State Bar No. 024237

**TB** **TIFFANY & BOSCO**
P.A.

Third Floor, Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Facsimile: (602) 255-0103
E-Mail: crk@tblaw.com; jdd@tblaw.com
*Attorneys for HIE Servicing, LLC*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SUNRISE HOSPITALITY, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 4:09-26457-JMM<br><br>**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY HIE SERVICING, L.L.C.,** |

HIE Servicing, L.L.C. ("HIE "), the senior secured creditor of Sunrise Hospitality, LLC (the "Debtor"), by and through its undersigned counsel, hereby submits this Chapter 11 Plan of Reorganization (the "Plan").

# ARTICLE I
## INTRODUCTION

ALL CREDITORS ARE ENCOURAGED TO CONSULT THE ACCOMPANYING DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AMONG OTHER THINGS, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTOR, THE HISTORICAL BACKGROUND OF THE CHAPTER 11 CASE AND THE PRE-PETITION PERIOD, THE PROJECTIONS GERMANE TO THE PLAN, AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT OR BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

# ARTICLE II
## DEFINITIONS

For purposes of the Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the capitalized terms not otherwise defined will have the meanings hereinafter stated. For purposes of the Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. The defined terms stated in Article II also are substantive terms of the Plan; and Article II will be deemed incorporated throughout the rest of the Plan to apply the substantive provisions included in the defined terms. Accordingly, the defined terms are as follows:

**2.1 Administrative Claim or Claims**. This term will refer to and mean a Claim for any cost or expense of administration of the Chapter 11 Cases allowed under §§503(b), 507(b) or 546(c)(2) of the Bankruptcy Code and entitled to priority under §507(a)(1) of the Bankruptcy Code.

**2.2 Administrative Claim Bar Date**. This term will refer to the date which is thirty days after the Effective Date. The Administrative Claim Bar Date does not apply to trade claims of vendors for ordinary course business expenses.

**2.3 Allowed Claim**. This term will refer to and mean every Claim against the Debtor: (a)(i) as to which a proof of such Claim has been filed within the time fixed by the Bankruptcy Court or, if such Claim arises from the rejection of an Executory Contract, on or before the first Business Day which is the earlier of thirty (30) days after the entry of the order rejecting the Executory Contract or thirty (30) days after the Confirmation Date, or (ii) which the Debtor has scheduled as liquidated in amount and undisputed; and in either event: (b)(i) as to which no objection to the allowance of such Claim has been filed within any applicable time period fixed by the Bankruptcy Court, or (ii) as to which the order allowing such Claim has become final and non-appealable without any appeal, review, or other challenge of any kind to that order having been taken or being still timely. The term "Allowed," when used to modify a reference in the Plan to any Claim or Class

of Claims shall mean a Claim (or any Claim in such Class) that is allowed, pursuant to the requirements of this definition.

**2.4**   **Assumed Executory Contract or Contracts**.  This term will refer to and mean every unexpired lease and other contract that is being assumed under 11 U.S.C. § 365 pursuant to this Plan that are identified on Schedule 1 to this Plan.

**2.5**   **Assumed Liabilities**.  This term will refer to all of the Debtor' liabilities that will be assumed by the Reorganized Debtor pursuant to the terms of this Plan as set forth more fully in Articles VI and VII below.

**2.6**   **Ballot**.  This term will refer to and mean the ballot for accepting or rejecting the Plan which will be distributed to Creditors entitled to vote on the Plan.

**2.7**   **Bankruptcy Code**.  This term will refer to and mean Title 11 of the United States Code, 11 U.S.C. §§101, *et seq.*, as it may be amended from time to time during the Chapter 11 Cases, and applicable portions of Title 18 and 28 of the United States Code, as amended.

**2.8**   **Bankruptcy Court or Court**.  These terms are completely synonymous and interchangeable, and will refer to and mean the United States Bankruptcy Court for the District of Arizona, or such other court which exercises jurisdiction over part or all of the Estates, including the United States District Court for the District of Arizona to the extent that the reference of part or all of the Chapter 11 Cases are withdrawn.

**2.9**   **Bankruptcy Estates or Estates**.  This term will refer to and mean the Estates created pursuant to 11 U.S.C. §541 when the Debtor filed their Chapter 11 Cases.

**2.10**   **Bankruptcy Rules**.  This term will refer to and mean the Federal Rules of Bankruptcy Procedure.

**2.11**   **Bar Date**.  This term will refer to and mean the last day for filing proofs of claims, which was May  24, 2010, the date previously set by the Bankruptcy Court.  All Creditors (except Creditors with Administrative Claims that arise after the Administrative Claim Bar Date, and Creditors holding Claims from the rejection of unexpired leases or Executory Contracts) must have filed proofs of claim by the Bar Date, or their Claim shall be forever barred and discharged.

**2.12**   **BDFC.**   This term will refer to and mean Business Development Finance Corporation, the holder of a second position deed of trust against the Hotel.

**2.13**   **BDFC New Note.**  This term will refer to and mean the secured promissory note to be issued to BDFC on the Effective Date in the amount of $2,000,000.00. which shall contain the following terms: (a) payment of $150,000.00 on the seventh business day after the Effective Date; (b) no interest; (c) payment of 35% of the Net Cash Flow until the sale of the Hotel and Personal Property; (d)  payment of 35% of the Net Sale Proceeds at which time the BDFC Note shall be paid in full and satisfied and all liens held by BDFC shall be released; and (e) secured by a second position deed of trust on the Hotel junior to the HIE New Note.

**2.14** **Business Day**. This term will refer to and mean every day except Saturdays, Sundays, and legal holidays, as defined in Federal Rule of Bankruptcy Procedure 9006.

**2.15** **Cash**. This term will refer to and mean cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

**2.16** **Causes of Action**. This term will refer to and mean the Retained Avoidance Actions and Retained Litigation Claims, collectively.

**2.17** **Chapter 11 Case**. This term will refer to and mean the Chapter 11 case commenced by the Debtor currently pending in the Bankruptcy Court at Case No. 4:09-26457-JMM.

**2.18** **Claim or Claims**. This term will refer to and mean "claim" as defined in Bankruptcy Code §101(5).

**2.19** **Class or Classes**. This term will refer to and mean each of the classifications of Claims and Equity Interests as described in Article III of the Plan.

**2.20** **Confirmation Date**. This term will refer to and mean the date on which the Bankruptcy Court enters the Confirmation Order.

**2.21** **Confirmation Hearing**. This term will refer to and mean the hearing regarding confirmation of the Plan conducted pursuant to Bankruptcy Code § 1128, as adjourned or continued from time to time.

**2.22** **Confirmation Order**. This term will refer to and mean the order entered by the Bankruptcy Court which confirms the Plan pursuant to Bankruptcy Code § 1129.

**2.23** **Creditor or Creditors**. This term will refer to and mean "creditor" as defined in Bankruptcy Code §101(10).

**2.24** **Debtor**. This term will refer to and mean together Sunrise Hospitality, L.L.C., an Arizona limited liability company.

**2.25** **Debtor's Professionals**. This term will refer to and mean the law firm of Deconcini, McDonald, Yetwin & Lacy, P.C.

**2.26** **Debtor's Schedules**. This term will refer to the Debtor's Schedules of Assets and Liabilities that Debtor filed in the Chapter 11 Case.

**2.27** **Disclosure Statement**. This term will refer to and mean the Disclosure Statement prepared by HIE with respect to the Plan, and approved by the Bankruptcy Court, including, but not limited to, any modification(s) and additional disclosure(s) (if any) provided by the Debtor to comply with Bankruptcy Code § 1127(c).

**2.28** **Disputed Claim**. This term will refer to and mean every Claim which is not an Allowed Claim.

**2.29**  **Effective Date**.  This term will refer to and mean the earlier of the thirtieth (30th) day after the Confirmation Order has become a Final Order provided that all of the conditions set forth in Section 13.1 of this Plan have been satisfied.

**2.30**  **Equity Interests**.  This term will refer to and mean all equity, stock, or claims subordinated under Bankruptcy Code § 510(b) relating to the Debtor.

**2.31**  **Estates' Assets**.  This term will refer to and mean the property of the Bankruptcy Estates as that term is defined in Bankruptcy Code § 541.

**2.32**  **Excluded Assets**.  This term will refer to (i) the Transferred Avoidance Actions, and (ii) the Transferred Litigation Claims, and (iii) all other assets that are not Retained Assets.

**2.33**  **Final Order**.  This term will refer to and mean an order of judgment of the Bankruptcy Court which shall not have been reversed, stayed, modified, or amended and the time to appeal from, or to seek review or rehearing of, shall have expired as to which no appeal or petition for review or rehearing is pending, or if appealed from, shall have been affirmed and no further hearing, appeal, or petition for review can be taken or granted, or as to which no stay has been entered to affect the operative provisions of such order of judgment.

**2.34**  **HHFI**.  This term refers to and means Holiday Hospitality Franchising, Inc., the franchisor of Debtor, pursuant to that certain contract entered into by and between HHFI and Debtor on or about September 13, 2005.

**2.35**  **HIE Cash Equity Contribution.**  This term refers to and means the payment of $150,000.00 HIE will make on the Effective Date to the Reorganized Debtor as a contribution s to the equity of that company.

**2.36**  **HIE New Note.**  This term will refer to and mean the new promissory note to be issued to HIE on the Effective Date in the amount of $3,000,000 and which will be secured by a new deed of trust in first position against the Hotel.

**2.37**  **HIE Total Equity Contribution.**  This term refers to and means the HIE Cash Equity Contribution plus the conversion by HIE of  approximately $200,000 of debt owed to HIE by the Debtor that shall occur on the Effective Date.

**2.38**  **HIE Unsecured Note.**  This term will refer to and mean the unsecured promissory note to be issued to HIE on the Effective Date in the amount of $2,300,000.00 and which shall not bear interest.

**2.39**  **Hotel**.  This terms shall mean the real estate and structure which is a Holiday Inn Express Suites hotel owned and operated by Debtor located at 1200 Sunrise Plaza Drive, Florence, Arizona.  The Hotel consists of 53,878 square feet, 90 rooms and a parking lot on 2.44 acres.

**2.40**  **Inter-Creditor Agreement.**  An agreement to be entered into between BDFC and HIE containing the material terms set forth in Article VII below.

**2.41** __Liquidating Agent.__  This term will refer to and mean the entity or individual, as appointed by the Bankruptcy Court pursuant to the Confirmation Order, to be vested with the authority pursuant to this Plan and the Liquidating Trust, or such other person who shall be appointed by the Bankruptcy Court.

**2.42** __Liquidating Trust__.  This term will refer to and mean the liquidating trust that is created and governed by the Liquidating Trust Agreement.

**2.43** __Liquidating Trust Agreement__.  This term will refer to and mean the Liquidating Trust Agreement that is attached as Schedule 2 to this Plan.

**2.44** __Loan Documents__.  This term will mean the loan documents between HIE and the Debtor and the loan documents between BDFC and the Debtor that created, evidence and secure the Permitted Liens.

**2.45** __Modified Loan Documents__.  This term will mean the Loan Documents as modified or amended by this Plan.

**2.46** __Net Cash Flow.__  This term will mean the funds remaining after payment of ordinary operating expenses, debt service associated with the Chapter 11 Case and Plan (payments for Allowed Administrative Claims, Allowed Priority Tax Claims, HHFI Allowed Unsecured Claims), debt service associated with the HIE New Note taxes and insurance.

**2.47** __Net Sale Proceeds.__  This term will mean the funds remaining from the sale of the Hotel and Personal Property after payment of commissions, closing costs, taxes and the remaining balance due, if any, under the terms of the Plan for and on account of Allowed Administrative Claims, Allowed Priority Tax Claims, HHFI, and the amount, if any, remaining to be distributed to holders of Allowed Unsecured Claims as set forth in Class 7 of this Plan.

**2.48** __Person__.  This term will refer to and mean "person" as defined in Bankruptcy Code § 101(41).

**2.49** __Personal Property.__  This term will refer to all property owned by the Debtor other than the Hotel.

**2.50** __Petition Date__.  This term will refer to and mean October 19, 2009, the date the voluntary Chapter 11 petitions of the Debtor.

**2.51** __Plan__.  This term will refer to and mean this "Plan Of Reorganization Proposed By HIE dated June 16, 2010" and every modification thereof, if any, filed by the Plan Proponent.

**2.52** __Plan Documents__.  This term will refer to this Plan, the Disclosure Statement, the Liquidating Trust Agreement, the Modified Loan Documents, any exhibits attached to the Plan and the Disclosure Statement and any other related documents.

**2.53** __Plan Proponent or Proponent__.  These term will refer to HIE.

**2.54** **Post-Confirmation Litigation**. This term will refer to and mean the prosecution of any of the Causes of Action transferred to the Liquidation Trust by the Liquidating Agent on behalf of the Liquidating Trust.

**2.55** **Priority Tax Claims**. This term will refer to the priority tax claims that will be classified and paid under the Plan as the Plan provides for Class 2 Claims.

**2.56** **Priority Non Tax Claim**. This term will refer to and mean every Unsecured Claim or portion thereof which is not an Administrative Claim, and which is entitled to priority under the applicable provision(s) of Bankruptcy Code §507 and that will be classified and paid under the Plan as the Plan provides for Class 1 Claims.

**2.57** **Professional Fees**. This term will refer to and mean any of the interim and final professional fees and expenses charged by the Debtor' Professionals.

**2.58** **Pro Rata**. This term will refer to and mean the proportion that an Allowed Claim in a particular Class bears to the total amount of all Allowed Claims in that Class.

**2.59** **Receiver**. This term will refer to and mean Resolute Commercial Services, LLC, c/o John Mitchell according to Order Appointing Receiver entered by the Superior Court of Arizona, Maricopa County, dated October 6, 2009 in Case No. CV2009-030791 and the additional Stipulated Order entered by the Bankruptcy Court in the Chapter 11 Case.

**2.60** **Rejected Executory Contract or Contracts**. This term will refer to and mean every unexpired lease and other contract which is not an Assumed Executory Contract.

**2.61** **Reorganized Debtor** shall mean the entity succeeding to the property interests of the Debtor on the Effective Date and having the rights, powers, duties and interests granted the "Reorganized Debtor" set forth in the Plan and granted entities having plans of reorganization confirmed under Chapter 11 of the Code.

**2.62** **Retained Assets**. This term will refer to all of the Debtor' assets, including without limitation, (i) all of the Estates' Assets; (ii) all assets listed in the Debtor' Schedules; (iii) all business licenses; (iv) all intellectual property, including trademarks, trade names, copyrights, and service marks; (v) all personal property located on or at the Hotel; (v) all of the Debtor' Cash; (vi) the Debtor's operations at the Hotel; and (ix) Retained Avoidance Actions and Retained Litigation Claims. This term specifically excludes all of the Excluded Assets.

**2.63** **Retained Avoidance Actions**. This term will refer to all statutory causes of actions under the Bankruptcy Code, including but not limited to §§ 506, 510, 542, 543, 544, 547, 548, 549, 550 and 1123(b), that the Debtor and their Estates may have against HIE and BDFC.

**2.64** **Retained Litigation Claims**. This term will refer to all rights, claims, torts, liens, liabilities, obligations, actions, causes of action, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise that the Debtor and its Estate may have against BDFC and HIE.

**2.65** **Transferred Avoidance Actions.** All statutory causes of actions preserved for the Debtor' Estates under §§ 506, 510, 542, 543, 544, 547, 548, 549, 550 and 1123(b) of the Bankruptcy Code, except for the Retained Avoidance Actions. Failure to list a Transferred Avoidance Action in the Plan or the Disclosure Statement does not constitute a waiver or release of such Retained Avoidance Action.

**2.66** **Transferred Litigation Claims**. This term will refer to and mean all rights, claims, torts, liens, liabilities, obligations, actions, causes of action, avoiding powers, proceedings, debts, contracts, judgments, offsets, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, including, without limitations, any legal malpractice claims or breach of fiduciary duty claims, that the Debtor and their Estates may have against any Person. Transferred Litigation Claims shall not include the Retained Avoidance Actions nor Retained Litigation Claims. Failure to list a Transferred Litigation Claim in the Plan or the Disclosure Statement does not constitute a waiver or release of such Transferred Litigation Claim.

**2.67** **Rules of Construction**. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, schedule to, or exhibit to the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. The Rules of Construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**2.68** **Secured Claim**. This term will refer to and mean every Claim or portion thereof which is secured by a lien, security interest, or assignment encumbering property (including all types of real property, personal property, and cash collateral) in which the Debtor have an interest, to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and the value of the interest of the Creditor holding the Secured Claim against the property.

**2.69** **Secured Creditor**. This term will refer to and mean every Creditor who holds a Secured Claim against the Debtor.

**2.70** **Secured Tax Claim**. This term will refer to and mean every Claim of any state or local governmental unit which is secured by property of the Estates by operation of applicable non-bankruptcy laws, including, but not limited to, every such Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and further including, but not limited to, any and all pre-petition date secured tax claims and the post-effective date secured tax claims.

**2.71** **Vestin Note.** This term shall refer to the promissory note issued by HIE in favor of Vestin _____.

.

# ARTICLE III
## CLASSIFICATION OF CLAIMS

**3.1** **General**. Pursuant to this Plan and in accordance with § 1123(a)(1) of the Bankruptcy Code, all Claims and Equity Interests (except Administrative Claims) are placed in the Classes described below. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim is also classified in a particular Class only to the extent that such Claim has not been paid, released, or otherwise satisfied prior to the Effective Date. As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claim will be deemed deleted automatically from the Plan; and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) will be deemed deleted automatically from the Plan with respect to the voting on confirmation of the Plan.

**3.2** **Classification.**

**3.2.1** **Unclassified: Administrative Claims**. The Assumed Administrative Claims will be all of the Debtor' Professionals Allowed Administrative Claims.

**3.2.2** **Class 1: Priority Non Tax Claims.** The Class 1 Claims will be all Claims that are entitled to priority under §§ 507(a)(4), (a)(5) and (a)(7) of the Bankruptcy Code. **Impaired.**

**3.2.3** **Class 2: Priority Tax Claims**. The Class 2 Claims will be all Claims which are entitled to priority under §§507(a)(8) and (c) of the Bankruptcy Code. **Impaired.**

**3.2.4** **Class 3: HIE Secured Claim**. The Class 3 Claim will be the Allowed Secured Claim of HIE. The aggregate amount of the debt owed to HIE is approximately $5,500,000.00 as of the date of the filing of this Plan. However, HIE has agreed, only for the purposes of the Plan, that the secured portion of its Claim shall be capped in the amount of $5,000,000.00 and the balance of its Claim shall be treated as an Unsecured Claim. **Impaired.**

**3.2.5** **Class 4: BDFC Partially Secured Claim.** The Class 4 Claim will be the Allowed Secured Claim of BDFC. The aggregate amount of BDFC' Claim is approximately $2,000,000.00. The Proponent has agreed, only for the purposes of the Plan, that BDFC shall be treated as having an Allowed Secured Claim in the amount of $500,000.00. **Impaired.**

**3.2.6** **Class 5: Miscellaneous Secured Claims.** The Class 5 Claims will be all other Secured Claims and Secured Tax Claims which are not otherwise classified herein. Each holder of a Secured Claim in Class 5 is considered to be in its own separate subclass within Class 5, and each subclass is deemed to be a separate Class for purposes of the Plan. **Impaired.**

**3.2.7** **Class 6: HHFI Claim for Franchise Fees.** The Class 6 Claims will be the Claims for unpaid royalties and franchise fees owed to HHFI which Proponent proposes be cured pursuant to the terms of this Plan. **Impaired.**

**3.2.8** **Class 7: Unsecured Claims**. The Class 7 Claims will be all Claims which are Unsecured Claims pursuant to the Plan. **Impaired.**

**3.2.9** **Class 8: Equity Interests**. The Class 8 Claims will consist of the Equity Interests in the Debtor. **Impaired.** For purposes of this Plan, the Equity Interests are deemed to have rejected the Plan.

# ARTICLE IV

# VALUE OF HOTEL

**4.1** **Value of Hotel**. Unless the Bankruptcy Court holds a hearing to determine the value of the Hotel prior to Confirmation, the value of the Hotel for the purposes of Confirmation shall be 5,200,000.00, the value of the Hotel as determined by an appraiser, Mr. Jan Sell, retained by HIE. HIE believes the value of the Hotel, as stabilized in 2013, is 6,020,000.00 based on the Sell Appraisal.

**4.2** **Valuation Hearing**. If any Creditor or party in interest disputes the value of the Hotel as set forth above in this Article, they shall be required to file an Objection identifying their dispute with that valuation, the value he, she or it asserts as the correct valuation for the Hotel and the basis, including an appraisal, for that alleged valuation. The Court will conduct a valuation hearing as part of the Confirmation Hearing if the requirements of this Article 4.2 have been satisfied.

# ARTICLE V

# MEANS FOR EXECUTION OF THE PLAN

The means for execution of the Plan are and will be as follows:

**5.1** **Retained Assets**. On the Effective Date, all of the Debtor's right title and interest in the Retained Assets shall be deemed transferred to and held by the Reorganized Debtor free and clear of all liens, claims, encumbrances and interests pursuant to 11 U.S.C. §363(f).

**5.2** **Assumed Liabilities**. On the Effective Date, Reorganized Debtor shall assume and be liable only for the Assumed Liabilities.

**5.3** **Transfer of Excluded Assets and Creation of Liquidating Trust**. On the Effective Date or as soon thereafter as practicable all Excluded Assets, including but not limited to the Transferred Litigation Claims and the Transferred Avoidance Actions shall be transferred and assigned to the Liquidating Trust for the benefit of all remaining unpaid Allowed Claims. In accordance with Section 1123(b) of the Bankruptcy Code, the Liquidating Agent shall become vested with, in its capacity as the representative of the Debtor's Estates under section 1123(b)(3)(B) of the Bankruptcy Code, and may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any of the Transferred Litigation Claims and Transferred Avoidance Actions.

Pursuant to the Liquidating Trust, the Liquidating Agent will, among other things, collect, administer and distribute in accordance with the terms of the Plan and the Liquidating Trust the proceeds from the Transferred Litigation Claims and the Transferred Avoidance Actions and the proceeds related to the sale or transfer of any other Excluded Assets. The terms of the Liquidating Trust will be controlled by the Liquidating Trust Agreement.

The Liquidating Trust will provide that Holders of Allowed Unsecured Claims, if any, entitled to distributions from the Liquidating Trust will receive payment on a *pro rata* basis after the payment of any legal or other professional fees and costs of the Liquidating Trust.

The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Liquidating Agent shall operate and maintain the Liquidating Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

For United States federal and applicable state income tax purposes, the transfer of the assets to the Liquidating Trust pursuant to and in accordance with the Plan shall be reported as a disposition of the assets directly to and for the benefit of the beneficiaries immediately followed by a contribution of the assets by the beneficiaries to the Liquidating Trust for the benefit of the beneficiaries. The beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust.

To the full extent permitted by law, all rights under (i) Section 363(h) of the Bankruptcy Code and (ii) Section 365 of the Bankruptcy Code (including without limitation Section 365(f) thereof) are preserved for the benefit of the Estates and their creditors, and may be exercised by the Liquidating Agent with the approval of the Bankruptcy Court.

As soon as practicable after the Effective Date, the Liquidating Agent may, if reasonably deemed necessary by the Liquidating Agent, make a good faith valuation of the trust assets. Such valuation shall be made available from time to time to the extent relevant as reasonably determined by the Liquidating Agent and shall be used consistently by all parties (including the Debtor, the Liquidating Agent and the beneficiaries) for all purposes, including federal and applicable state income tax purposes. Notwithstanding the foregoing, any such valuation shall not be binding upon the Liquidating Agent with respect to liquidation of assets or any other action taken pursuant to the Plan.

Upon the distribution of all assets vested in the Liquidating Trust and the preparation and filing of any tax returns required by the Liquidating Trust, the Liquidating Trust shall be terminated and the Liquidating Agent shall have no further responsibilities or duties.

**5.4** **Funding on the Effective Date**. All payments under the Plan which are due on the Effective Date pursuant to the terms of the Plan will be funded or paid by any and all Cash in any accounts belong to Debtor and, in the event there is not sufficient Cash to make all such payments, by HIE.

**5.5** **Payments Effective on Tender**. Whenever the Plan requires a payment to be made, such payment will be deemed made and effective upon tender thereof by the Reorganized Debtor or the Liquidating Agent to the Creditor to whom payment is due. Such tender will be effective when and if made in Cash. If any Creditor refuses a tender, the amount tendered and refused will be held by the Reorganized Debtor or the Liquidating Agent for the benefit of that Creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while a dispute is pending and after adjudication thereof, the Creditor will not have the right to claim interest or other charges or to exercise any other right which would be enforceable by the Creditor if the Debtor or the Liquidating Agent failed to pay the tendered payment.

**5.6** **Operative Documents**. The Plan Proponent may prepare any and all documents, including, but not limited to, modification documents, which are necessary or appropriate to execute the Plan. If there is any dispute regarding the reasonableness or propriety of any such documents after reasonable and good faith efforts by the Plan Proponent to negotiate and obtain approval of the documents by the other affected Person(s), any such dispute will be presented to the Bankruptcy Court for determination at or in conjunction with the Confirmation Hearing.

## ARTICLE VI
## TREATMENT OF UNCLASSIFIED CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code. The holder of each Allowed Administrative Claim shall be paid in full in Cash upon the later to occur of (a) the Effective Date, or as soon thereafter as

practicable; or (b) the fourteenth (14th) Business Day after such claim is Allowed, or as soon thereafter as practicable.

## ARTICLE VII
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**7.1** **Treatment of Class 1: (Priority Non Tax Claims)**.  To the extent that the Priority Non Tax Claims have not already been paid, holders of Allowed Class 1 Claims entitled to priority under §§ 507(a)(3), (a)(5) and (a)(7) of the Bankruptcy Code will be paid by the Reorganized Debtor in the manner provided and required by the Code. To the extent not paid on the Effective Date, claims in this Class shall be Assumed Liabilities only to the extent of and only pursuant to the terms of the treatment provided by this provision of the Plan.

**7.2** **Treatment of Class 2 (Priority Tax Claims)**.  To the extent that the Priority Tax Claims have not already been paid, holders of Allowed Class 2 Claims shall receive on account of each such claim, based on the sole discretion of the Reorganized Debtor, either (a) a cash payment in the full amount of the Allowed Priority Tax Claim on the Effective Date or upon the expiration of the appeal period of the order allowing such claim, whichever is later; or (b) deferred payments during a period not exceeding five years after the Petition Date equal to the allowed amount of such claim, which payments shall include interest on the allowed claim at the appropriate statutory rate.   To the extent not paid on the Effective Date, Allowed Claims in this Class shall be Assumed Liabilities only to the extent of and only pursuant to the terms of the treatment provided by this provision of the Plan.

**7.3** **Treatment of Class 3 (HIE Secured Claim)**.  HIE's Secured Claim shall be paid in the following manner: On the Effective Date, (A) HIE or its nominee shall be issued the HIE New Note secured by a deed of trust in first position in the Hotel and security interest in the Personal Property with an initial principal balance of $3,000,000.00 having an interest rate of 15% payable as follows: (1) $20,000.00 per month during 2010; (2) $30,000.00 per month during 2011; (3) $35,000.00 per month during 2012 and 2013; (4) $40,000.00 per month during 2014 and 2015; and (5) the remaining principal balance of the HIE New Note plus all accrued but unpaid interest, fees and costs shall be due on December 31, 2015; (B) HIE will be issued the HIE Unsecured Note in the amount of $2,000,000.00 payable as follows: (1) no interest; (2) HIE will be paid 65% of the Net Cash Flow from the operations of the Hotel each quarter after the Effective Date; and (3) Upon a sale of the Hotel, HIE  will be paid 65% of the Net Sale Proceeds; and (C) convert the remaining balance of its Claim, approximately $500,000.00, into equity in the

Reorganized Debtor. The amount due or which may become payable to HIE under the terms of this provision of the Plan is an Assumed Liability.

HIE shall enter into the Inter-Creditor Agreement with BDFC on the Effective Date. In addition, HIE shall make the HIE Cash Equity Contribution on the Effective Date. HIE shall own 100% of the membership interests in the Reorganized Debtor on the Effective Date immediately upon conversion of the difference between to total amount of its Secured Claim and the amount of the HIE New Note and the HIE Unsecured Note. In the event the HIE New Note and the HIE Unsecured Note are paid in full prior to payment of the BDFC New Note, HIE shall retain the right to be paid 35% of the Net Cash Flow and Net Sale Proceeds as equity distributions.

HIE's prepetition note, deed of trust and any other liens and claims against the Debtor, the Hotel and the Personal Property shall be cancelled, void and released only as to the Debtor and the Reorganized Debtor as of the Effective Date. Nothing in this Plan is intended to release or may be construed to release any claims and causes of action held by HIE against any guarantors of the indebtedness owed by the Debtor to HIE.

**7.4** **Treatment of Class 4 (BDFC Partially Secured Claim)**. BDFC' partially Secured Claim shall be paid in the following manner: On the Effective Date BDFC shall be issued the BDFC New Note, payable as follows: (A) no interest; (B) $150,000.00 ten business days after the Effective Date; (C) 35% of the Net Cash Flow from the operations of the Hotel each quarter after the Effective Date; (D) Upon a sale of the Hotel BDFC will be paid 65% of the first $5.5. million of the Net Sale Proceeds; and (E) BDFC shall be required to subordinate its second position deed of trust securing the BDFC New Note to any new note and deed of trust of any creditor which may be willing to refinance the HIE New Note on terms and conditions that are more favorable for the Reorganized Debtor than the Vestin Note. The BDFC New Note shall be cancelled, void and released upon the payment to BDFC of the amounts set forth in this section including the portion of the Net Sale Proceeds due and payable to BDFC pursuant to this section of the Plan. The amount due or which may become payable to BDFC under the terms of this provision of the Plan is an Assumed Liability.

The balance of BDFC' Allowed Claim in the amount of approximately $1,500,000.00 shall be treated as unsecured in accordance with the terms of Class 7 below.

BDFC shall enter into the Inter-Creditor Agreement with HIE on the Effective Date.

BDFC' prepetition note, deed of trust and any other liens and claims against the Debtor, the Hotel and the Personal Property shall be cancelled, void and released only as

to the Debtor and the Reorganized Debtor as of the Effective Date. Nothing in this Plan is intended to release or may be construed to release any claims and causes of action held by BDFC against any guarantors of the indebtedness owed by the Debtor to BDFC.

**7.5** **Treatment of Class 5 (Miscellaneous Secured Claims)**. The Proponent believes there are no persons holding claims in this Class. However, if a creditor files a Claim that is Allowed and determined to have a lien against the Hotel or the Personal Property, that Claim, when Allowed, shall be treated in this Class. Any lien held by a Creditor holding a Claim in this Class shall be void, cancelled, released and have no further or continuing effect, by operation of the Confirmation Order, because there is no equity in the Hotel or the Personal Property in excess of the amount of the Allowed Secured Claim of HIE and the Allowed Claim of BDFC. The holder of an Allowed Class 5 Claim, if any, shall be treated as unsecured in accordance with the terms of Class 7 below.

**7.6** **Treatment of Class 6 (HHFI Claim for Franchise Fees).** The Class 6 Allowed Claims of HHFI for unpaid royalties and franchise fees in the amount of approximately $56,000.00 owed to HHFI will be paid in full in order to cure prepetition defaults under the agreements between HHFI and Debtor in equal monthly payments beginning on the first Business Day that is 30 days after the Effective Date over a period which shall not exceed six months. The amount due or which may become payable to HHFI under the terms of this provision of the Plan is an Assumed Liability.

**7.7** **Treatment of Class 7 (Unassumed Unsecured Claims)**. Each holder of an Allowed Class 7 Claim will be paid: (A) his, her or its *pro rata* portion of a total pool of $100,000.00 to be paid by the Reorganized Debtor over a period of four years by distributing $25,000.00 on a *pro rata* basis on the one year anniversary of the Effective Date, $25,000.00 on a *pro rata* basis on the second year anniversary of the Effective Date, $25,000.00 on a *pro rata* basis on the third year anniversary of the Effective Date, and $25,000.00 on a *pro rata* basis on the fourth year anniversary of the Effective Date; (B) his, her or its *pro rata* portion of the net proceeds held by the Liquidating Trust after it has settled, litigated, sold or otherwise liquidated all of the Excluded Assets. Allowed Class 7 Claims are not Assumed Liabilities.

**7.8** **Treatment of Class 8 (Equity Interests)**. All Equity Interests shall be cancelled and terminated as of the Effective Date. The holders of Allowed Equity Interests shall not receive or retain any property under the Plan. Class 8 is impaired by the Plan and is deemed to have rejected the Plan.

**7.9** **The Inter-Creditor Agreement**. On the Effective Date, HIE and BDFC shall enter into the Inter-Creditor Agreement to protect the rights of BDFC which shall provide for the following terms: (a) HIE shall select a professional management company to manage and operate the Hotel; (b) HIE shall have the sole and exclusive right and discretion to negotiate and accept any offers for the purchase of the Property and enter

into a Purchase and Sale Agreement as to the Property for a sale price that shall be not less than $5,100,000.00 (the Minimum Sale Price"); and such other terms and conditions that are standard and commercially reasonable in such agreements between creditors.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS

**8.1** **Assumption of Assumed Executory Contracts**.  On the Effective Date, Reorganized Debtor shall hereby assume all the Executory Contracts with HHFI and the other Executory Contracts that are identified on Schedule 1 to this Plan pursuant to 11 U.S.C. § 365.

**8.2** **Rejection of Rejected Executory Contracts**.  On the Effective Date, Debtor shall hereby reject all Rejected Executory Contracts pursuant to 11 U.S.C. §365.

**8.3** **Cure Amounts**.  Any cure amount associated with each Assumed Executory Contract, other than the Executory Contract with HHFI treated separately above, will be satisfied by Reorganized Debtor, pursuant to Section 365(b)(1) of the Bankruptcy Code, at the option of Reorganized Debtor (i) by payment of the cure amount in cash within a reasonable time after the Effective Date, (ii) by such other terms as are agreed to by the parties, or (iii) in the event of a dispute over a cure amount, within twenty (20) days of a Final Order resolving the cure amount; provided, however, that if the cure amount determined by Final Order is unacceptable to Reorganized Debtor, then Reorganized Debtor shall have ten (10) days from the date of the Final Order to reject the Assumed Unexpired Real Property Lease or Assumed Executory Contract pursuant to a written motion filed with the Bankruptcy Court, and such Assumed Executory Contract shall be deemed to never have been assumed.

**8.4** **Rejection Claims Bar Date**.  Every Claim asserted by a Creditor arising from the rejection of a Rejected Executory Contract must be filed with the Bankruptcy Court no later than the first Business Day which is twenty (20) days after the Confirmation Date.  Every such Claim which is timely filed, as and when it becomes an Allowed Claim, will be treated under Class 7 of the Plan.  Every such Claim which is not timely filed by the deadline stated above will be forever barred and discharged and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

## ARTICLE IX
## DISCHARGE

**9.1** **Discharge of Claims and Termination of Equity Interests**.  Except as otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the payments and distributions to be made hereunder shall discharge and release all existing debts and Claims, and terminate all Equity Interests, of any kind, nature or description whatsoever against or in the Debtor, the Reorganized Debtor, the Liquidating Trust or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in this Plan, upon the Effective Date, all Claims against and Equity Interests in the Debtor, regardless of whether or not (i) a proof of Claim or Equity Interest has been filed or is or was deemed filed, (ii) such Claim or Equity Interest was listed on any of the Debtor' Schedules, (iii) such Claim or Equity

Interest was Allowed, or (iv) the holder of such Claim or Equity Interest has voted to accept or reject this Plan, shall be, and shall be deemed to be, discharged, released and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Debtor, Reorganized Debtor, the Liquidating Trust, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

**9.2** **Discharge of Debtor**.  Except as otherwise provided herein or in the Confirmation Order, upon the Effective Date, and in consideration of the distributions to be made hereunder, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder, regardless of whether or not (i) a proof of Claim or Equity Interest has been filed, (ii) such Claim or Equity Interest was Allowed, or (iii) the holder of such Claim or Equity Interest has voted to accept or reject this Plan, shall be deemed to have forever waived, released and discharged the Debtor, Reorganized Debtor, and the Liquidating Trust, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against Reorganized Debtor or terminated Equity Interest in Reorganized Debtor.

**9.3** **Exculpations**.  HIE, BDFC, and their respective members, officers, directors, employees, agents, attorneys, financial advisors or professionals shall not have or incur any liability to any holder of any Claim or Equity Interest for any act or omission arising out of or in connection with the Chapter 11 Cases, the administration of assets of the Debtor' Estates, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or property to be distributed under the Plan, except for willful misconduct or gross negligence.  HIE, BDFC, and their respective members, officers, directors, employees, agents, attorneys, financial advisors or professionals shall be deemed to have acted in good faith with regard to the solicitation of acceptances or rejections of this Plan and shall be entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.  Entry of the Confirmation Order shall act as a comprehensive release of and injunction against the bringing of any claim or cause of action with respect to any such liability.

**9.4** **Injunction Against Interference With Plan**.  Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### ARTICLE X
### RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan, the Bankruptcy Court will retain jurisdiction for the following purposes:

**10.1** **In General**.  The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claim(s) upon any objection(s) thereto (or other

appropriate proceedings) by the Debtor, HIE, BDFC, by the Liquidating Agent, or by any other party-in-interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request(s) for payment(s) thereof, including Administrative Claims for Professional Fees.

**10.2** **Plan Disputes and Enforcement**. The Bankruptcy Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of the Plan. The Court also will retain jurisdiction to enforce any provisions of the Plan and any and all documents relating to the Plan. The Bankruptcy Court will also retain jurisdiction to determine any dispute(s) which may arise regarding any application to modify this Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

**10.3** **Further Orders**. The Bankruptcy Court will retain jurisdiction to facilitate the performance of and under the Plan by entering any further necessary or appropriate order(s) regarding enforcement of the Plan and any provision(s) thereof. In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the discharge of any Claim or Equity Interest, or any portion thereof, pursuant to the Plan.

**10.4** **Claims Against Estates**. The Bankruptcy Court will retain jurisdiction to adjudicate all Claims to a security or ownership interest in any property of the Debtor's Estates or in any proceeds thereof.

**10.5** **Other Claims**. The Bankruptcy Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in the Plan, including but not limited to, the adjudication of any and all Litigation Claims, Avoidance Actions, and "core proceedings" under 28 U.S.C. §157(b) which may be pertinent to the case.

**10.6** **Final Decree(s)**. The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree(s) in the Bankruptcy Case.

**10.7** **Appeals**. In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to effectuate the reorganization of the Debtor. In addition, to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated

**10.8** **Assumed and Rejected Executory Contracts**. The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Assumed or Rejected Executory Contracts and any and all Claims arising therefrom.

**10.9    Pending Matters**.  The Bankruptcy Court will retain jurisdiction to hear and determine any motion, application, adversary proceeding, contested matter and other litigated matter pending on the Confirmation Date

**10.10   Distributions**.  The Bankruptcy Court will retain jurisdiction to ensure that distributions to holders of Claims are accomplished as provided in this Plan and the Liquidating Trust.

**10.11   Tax Claims**.  The Bankruptcy Court will retain jurisdiction to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requested expedited determination of tax under section 505(b) of the Bankruptcy Code).

**10.12   Liquidating Trust**.   The Bankruptcy Court will retain jurisdiction to adjudicate any and all disputes between and among the Debtor, the Liquidating Agent, Reorganized Debtor, any Creditor and/or Equity Interest with respect to any dispute under the Liquidating Trust.

**10.13   General Reservation**.  The Bankruptcy Court will retain jurisdiction to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code

## ARTICLE XI
## LIMITATION OF LIABILITY

**11.1    Third Party Release and Injunction**.  Upon the Effective Date, except as otherwise provided herein, all Persons shall be deemed to have released, and shall be forever precluded and permanently enjoined from asserting, commencing, conducting, enforcing, attaching, collecting, recovering, perfecting, creating or continuing, in any manner, directly or indirectly, against the Debtor, the Liquidating Agent, and the Reorganized Debtor any (i) Lien, encumbrance, security interest, Equity Interest or charge of any nature or description whatsoever relating to the Debtor, the Chapter 11 Case or affecting property of the Debtor's Estate, (ii) claim or any other Liability relating to the Debtor or the Chapter 11 Case, and (iii) causes of action, whether known or unknown, discovered or undiscovered, scheduled or unscheduled, contingent, fixed, unliquidated or disputed, whether assertable directly or derivatively by, through, or related to the Debtor, matured or unmatured, contingent or noncontingent, senior or subordinated, based upon any condition, event, act, omission, occurrence, transaction or other activity, inactivity, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in any way arising out of, relating to or connected with the operation of the Debtor's business or the Chapter 11 Case, all regardless of whether (a) a proof of Claim or Equity Interest has been filed or is deemed to have been filed, (b) such Claim or Equity Interest is Allowed, or (c) the holder of such Claim or Equity Interest has voted to accept or reject this Plan, except for willful misconduct or gross negligence.

**11.2    Post-Confirmation Limitation of Liability**.   Upon entry of the Confirmation Order, the Liquidating Agent or any of its/his respective members, officers, directors, employees, agents, attorneys or professionals shall not have or incur any liability to any holder of any Claim or Equity Interest for any act or omission arising out of or in connection with the Chapter 11 Case, the administration of assets of the Debtor's

Estates, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the Liquidating Trust, or property to be distributed under the Liquidating Trust, except for willful misconduct or gross negligence.

## ARTICLE XII
## GENERAL PROVISIONS

**12.1** **Modification of Plan**.  The Plan may only be modified by order of the Court upon motion by the Plan Proponent, subject to and in accordance with the provisions and requirements of Section 1127.  After the Confirmation Date and prior to substantial consumption of the Plan as defined in 11 U.S.C. §1101(2) of the Bankruptcy Code, the Debtor may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan.

**12.2** **Revocation or Withdrawal of the Plan**.  The Plan Proponent reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.  If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver of any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor.  In the event this Plan is withdrawn or revoked, nothing set forth herein shall be deemed an admission of any sort, and this Plan and any transaction contemplated thereby shall not be admitted into evidence in any proceeding.

**12.3** **Binding Effect**.  The Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the holders of all Claims and Equity Interests, and their respective successors and assigns with respect to their respective Claims against the Estates' Assets or Equity Interests in the Debtor.  The Plan is binding on all Creditors and parties-in-interest who do not (i) timely file an objection with the Bankruptcy Court, with a copy served on HIE, (ii) comply with all requirements of the Bankruptcy Code and Bankruptcy Rules regarding such objections, (iii) appear in person, together with witnesses, unless otherwise ordered by the Court, at the Confirmation Hearing, and (iv) comply with any scheduling order issued by the Court, including complying with any briefing requirements and required disclosures of witnesses and exhibits.

**12.4** **Extension of Payment Dates**.  If any payment date falls due on any day which is not a Business Day, then such payment date will be extended to the next Business Day.

**12.5** **Additional Assurances**.  The Debtor, Reorganized Debtor, and the Creditors holding Claims herein will execute such other and further documents as are necessary to implement any of the provisions of the Plan.

**12.6** **Confirmation by Non-Acceptance Method**.  The Debtor hereby request, if necessary, confirmation of the Plan pursuant to Bankruptcy Code §1129(b), 11 U.S.C.

§1129(b), with respect to any impaired Class of Claims or Equity Interests which does not vote to accept the Plan.

**12.7    Vesting**.  As of the Effective Date, all property of the Debtor and the Estates will vest in either Reorganized Debtor or the Liquidating Trust, as provided in Article VI of this Plan, free and clear of all Claims, liens, security interests, assignments, encumbrances, charges, and other interests of Creditors (except those Creditors whose Claims have been modified and restructured and survive as provided in the Plan.)

**12.8    Captions**.  Section captions used in the Plan are for convenience only, and will not affect the construction of the Plan.

**12.9    Prohibition Against Prepayment Penalties**.  If Reorganized Debtor or Liquidating Agent choose, in their sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, Reorganized Debtor or Liquidating Agent will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Bankruptcy Court.  Neither Reorganized Debtor nor Liquidating Agent will not have any obligation to pay any such prepayment.

**12.10   No Attorneys' Fees and Interest**.  Other than the fees for the Debtor' Professionals, no attorneys' fees shall be paid by Debtor or the Reorganized Debtor with respect to any Claim or Equity Interest except as specified herein or as provided by the Confirmation Order or other Final Order of the Bankruptcy Court.  No interest shall accrue or be payable in respect of any Claim or Equity Interest whether Disputed or otherwise.

**12.11   Payment of Statutory Fees**.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Confirmation Date.

**12.12   Successors and Assigns**.  The rights and obligations of any Creditor or any holder of an Equity Interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or such holder of an Equity Interest.

**12.13   Severability and Reformation**.  It is the Debtor' intention to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if any provision(s) of the Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision(s) will be deemed severed and automatically deleted from the Plan, if it cannot be reformed; or the provision(s) or its interpretation will be deemed reformed to ensure compliance. Pursuant to any ruling(s) by the Bankruptcy Court regarding the subject matter of this Section, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provision(s) of the Plan.

**12.14   Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code (i) the creation of any Lien or other security interest, or (ii) the making or assignment of any lease or sublease, or (iii) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including,

without limitation, any restructuring, disposition, liquidation, or dissolution, deeds, bills of sale, or transfers of tangible property will not be subject to any stamp tax or other similar tax. Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased real and personal property, approved by the Bankruptcy Court on or prior to the Effective Date shall be deemed to have been in furtherance of, or in connection with, this Plan.

**12.15 Governing Law**. Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, this Plan, the Plan Documents and any agreements, documents, and instruments executed in connection therewith, shall be governed by, and construed and enforced in accordance with the laws of the State of Arizona, without giving effect to the principles of conflicts of law thereof, except as may otherwise be provided in such agreements, documents, and instruments.

**12.16 Time Bar to Payments**. Checks issued by the Liquidating Agent with respect to Allowed Claims shall be null and void if not negotiated within three (3) months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Agent by the holder of the Allowed Claim with respect to whom such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the within four (4) months of the date of issuance of the particular check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

**12.17 Disclosure Statement**. All Creditors, the holders of all Equity Interests, and all other interested parties (if any) are referred to in the Disclosure Statement, which will accompany the Plan in conjunction with any solicitation by the Debtor of acceptances of the Plan.

**ARTICLE XIII**
**CONDITIONS PRECEDENT TO EFFECTIVENESS OF THIS PLAN**

**13.1 Conditions to Effective Date**. The Effective Date of this Plan shall not occur unless and until each of the following conditions have been satisfied or waived by the Proponent:

(i) the Bankruptcy Court shall have entered the Confirmation Order, the effect of which is not stayed;

(ii) all Plan Documents shall have been executed and delivered by the parties thereto, or receipt thereof waived by the Debtor and Reorganized Debtor, and any conditions to the effectiveness of the Plan Documents shall have been satisfied or waived, as provided therein;

(iii) the Liquidating Trust Agreement has been executed;

(v) All licenses and Executory Contracts necessary for the operation of the Retained Assets, including any and all agreements with HHFI, are transferable and assumable on the Effective Date to Reorganized Debtor.

**13.2  Waiver of Conditions**.  Any of the foregoing conditions may be waived by the Plan Proponent, in whole or in part, without notice, at any time, without an order of the Bankruptcy Court and without any formal action other than proceeding to consummate this Plan.

## ARTICLE XIV
## CLAIMS BAR DATE AND OBJECTIONS TO CLAIMS

Claimants holding Claims (other than Administrative Claims and Professional Fees) against the Estates must submit proofs of Claim on or before the Bar Date, which was previously set as May 24, 2010, by the Bankruptcy Court.

Any objection to a Claim (other than Administrative Claims and Professional Fees) must be filed with the Bankruptcy Court and served upon the holder of such Claim pursuant to the Bankruptcy Code and the Bankruptcy Rules no later than ninety (90) days after the Effective Date of the Plan.  The Liquidating Agent shall reserve funds sufficient to make distributions in accordance with the Plan on account of all Claims which are subject to objections until such objections are resolved by a Final Order.

## ARTICLE XV
## UNITED STATES TRUSTEE'S FEES

The Reorganized Debtor shall pay all quarterly fees payable to the Office of the United States Trustee for the Debtor after Confirmation, consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6).

DATED this 17 day of June, 2010.

HIE SERVICING, L.L.C.

By: /s/ _____

Its: Manager

TIFFANY & BOSCO

By: /s/ Christopher R. Kaup _____

      Christopher R. Kaup
      Camelback Esplanade II
      Third Floor
      2525 East Camelback Road
      Phoenix, Arizona 85016

## **Schedule 1**

### **Assumed Executory Contracts**

1.      Any and all agreements between the Debtor and HHFI;

**Schedule 2**

**Liquidating Trust Agreement**

**To Be Supplied**